Erika H. Warren (State Bar No. 295570)
Jesse A. Macias (State Bar No. 254794)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-3327@cases.warrenlex.com

*Pro bono attorneys for Plaintiff Lia Javier*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIA JAVIER,<br><br>    Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>    Defendant.<br>———————————————————— | Case No. 4:24-cv-03327-YGR<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br><br>**AMENDED COMPLAINT** |

Plaintiff Lia Javier ("Plaintiff" or "Ms. Javier") brings this complaint against defendant Kaiser Foundation Health Plan, Inc. ("Defendant" or "Kaiser"), and alleges as follows:

## THE PARTIES

1. Ms. Javier is an individual residing in Contra Costa County, California. Ms. Javier is a former employee of Kaiser and a participant in the Kaiser Permanente Retirement Plan ("the Plan").

2. On information and belief, defendant Kaiser Foundation Health Plan, Inc. is a corporation with its headquarters at One Kaiser Plaza, Oakland, CA 94612.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this action under at least Section 502(a)(1)(B) of Employee Retirement Income Security Act ("ERISA"); 29 U.S.C. § 1132(a)(1)(B).

4. Venue is proper in this Court because a substantial part of the relevant events occurred in this district.

## BACKGROUND

5.    This action is a third attempt by Ms. Javier, a significantly mentally disabled individual pensionholder, to restore the retirement benefits she was wrongly urged by Kaiser representatives to surrender.

6.    Ms. Javier worked as an Administrative Specialist at Kaiser from January 2000 until March 2010, when her position was terminated.

7.    Ms. Javier is diagnosed with multiple mental health disorders including schizophrenia and bipolar disorder.  Ms. Javier's mental health disorders greatly impair her ability to care for herself. Beginning in at least July 2011, Ms. Javier has been prescribed psychotropic medications by her physician to treat her symptoms including "significant perceptual and thought disturbance."  Beginning in 2013, Ms. Javier's physician concluded that, because she "continued to be extremely unstable with worsening of her psychological condition despite her maintenance on multiple psychotropic medications," Ms. Javier was and is "incapable of maintaining any type of employment."

8.    On August 27, 2013, Ms. Javier was determined to be disabled and unable to work for purposes of Social Security Disability Insurance ("SSDI").  Ms. Javier's disability is ongoing and well documented; she continues to receive SSDI benefits.  Ms. Javier has no other source of income; she lives off of her SSDI benefits, receives Cal Fresh assistance, and is a Medi-Cal beneficiary.

9.    Since 2013, Ms. Javier's physicians have repeatedly concluded and documented that Ms. Javier is unable to care for herself without daily assistance from her children.  In particular, her doctors have found Ms. Javiar needs assistance with receiving adequate nutrition, hygiene, personal needs and grooming.

10.    Ms. Javier is thus the quintessential beneficiary of ERISA:  Ms. Javier worked for a decade to earn benefits under the Plan, which assets comprise her entire savings.  Without access to the tax-deferred plan, and absent a fiduciary to oversee it, Ms. Javier is unable to safeguard or manage her retirement funds due to her disability.

//

//

//

Case No. 4:24-cv-03327-YGR
AMENDED COMPLAINT

**A.     In 2017, Kaiser Urged Ms. Javier to Quickly Elect a Lump Sum "Buyout" of her Pension Plan Balance**

11.     On October 3, 2017, Ms. Javier received a postcard in the mail labeled from Kaiser.  The postcard included little information, but urged that Ms. Javier "Act by October 5, 2017"—two days later—because Kaiser was offering a "limited time opportunity to receive your pension benefit as early as November 2017."

12.     Ms. Javier had received no prior information, by mail or otherwise, regarding the "limited time opportunity."

13.     Ms. Javier did not know what to do, and so, the next day called the Kaiser Election Help Desk number listed on the postcard she received.  During that call, Ms. Javier repeatedly expressed her confusion (emphasis added):

| | |
|---|---|
| [Representative]: | And how can I help you today? |
| Ms. Javier: | I have a question. I'm wondering what happened to the mailing because I just got this yesterday, um, via the post card, and it's saying it ends tomorrow. |
| [Representative]: | Okay. |
| Ms. Javier: | **And what is this about? It just has the post card with no—really, no information.** It said call and then a special offer or something. |
| [Representative]: | The information that was sent out about the lump sum? |
| Ms. Javier: | Yeah. |
| [Representative]: | Yeah, that's in reference to the current lump sum offer that's available from the plan. |
| Ms. Javier: | Okay, I'm-I'm asking what is it about? Because I got a post card yesterday.  It doesn't say everything on it. It says to call between 7:00 a.m.—**it says, "Act"**—**it says, "Act by October 5th, 2017."**  The election kit that I was supposed to be receiving in mid-August. |
| [Representative]: | Right. So that's about the current lump sum option that's available from the pension plan. |

| Ms. Javier:: | Okay, I'm saying—okay, is there someone else I can speak to? I—I don't know if you're understanding what I'm saying. I just got this in the mail so you're—**I don't know what's going on**.  Is there—is there someone else I could speak to? |
|---|---|
| [Representative]: | Any representative here can assist you, ma'am.  We all have the same information. |

14.    Ms. Javier called the Election Help Desk again on the same day and spoke with a different representative, again explaining her utter confusion about what the postcard meant or what she should do.  During that call, Ms. Javier expressed that she had received no information beyond the single postcard telling her to "Act by October 5," and that other information must have been sent, as she believed  people had been stealing her mail.  The second Kaiser representative offered no explanation to Ms. Javier regarding the election, or what the postcard was about.  Instead, they immediately directed Ms. Javier to their online portal, telling Ms. Javier, "that way you can complete your election online."

15.    Ms. Javier specifically disclosed to the second Kaiser representative that she suffers from a disability that prevented her from understanding what the postcard meant or what options were being presented to her by Kaiser.  In particular, Ms. Javier repeatedly stated that she is disabled, and specifically that, because she is disabled, "there's no way I'm going to be able to make a decision within a day or a few hours."  The second Kaiser representative did not follow up on Ms. Javier's statements concerning her disability.

16.    Ms. Javier was instead directed to "complete your election," despite her multiple protestations that she did not understand what the postcard meant or what offer was being presented to her to "act now" on:  the transcript of Ms. Javier's second call to the Kaiser Election Help Desk includes her repeated interjections that "I don't even know what's going on" and "What is this anyway?"

17.    At one point during that call, Ms. Javier asked whether the number she called was "Kaiser original," stating once again that she "can't make a decision, like you said, within a day."  The representative responded, "Yes, this is Kaiser" and "[s]o Kaiser is giving you this opportunity to take this benefit, um, at your current age.  If it's missed then you won't be able to take until age 65."

//

//

18.     Ms. Javier asked several times to speak to a supervisor, but was either ignored or told that supervisors required one business day to return calls, meaning the call back would come too late for Ms. Javier to "Act" as she was being urged by Kaiser to do.

19.     The second Kaiser representative repeatedly told Ms. Javier to elect into the "opportunity to take this benefit" by October 5, assuring her that she could cancel the election by October 31. Trusting that assurance, and although she still did not understand, Ms. Javier agreed to use the Kaiser online portal to permit Kaiser's buy-out of her pension plan.

20.     Ms. Javier called Kaiser back on multiple occasions before October 31, 2017.  Each time, Ms. Javier was unsuccessful in reaching anyone able to help her make the cancellation.  For example, on one call Ms. Javier made to the Kaiser Election Help Desk, the representative stated that they worked for a company hired by the Kaiser Foundation Health Plan; in other words, that they were *not* "Kaiser" or "Kaiser original" as they had claimed to be on October 4.  Ms. Javier tried calling "Kaiser original" by contacting the Kaiser Divisional Offices, who said they would be unable to transfer Ms. Javier to the Kaiser Permanente Retirement offices.

21.     Ms. Javier was frantic.  She, her son, and her daughter all searched Kaiser's website for contact information for the Kaiser Permanente Retirement offices, but found none.  On information and belief, Kaiser intentionally obfuscated its contact information in order to discourage plan beneficiaries from outreach regarding their pension plans, in violation of their fiduciary obligations.

22.     Soon after October 31, 2017, Ms. Javier and her daughter located a contact telephone number for the Kaiser Permanente Retirement offices, which was different from the telephone number on the postcard she'd received and responded to from Kaiser on October 4.  Ms. Javier spoke with another Kaiser representative and, for the first time, received details regarding the pension plan buy out offer and, critically, its tax and security implications on her retirement benefits.

23.     On November 16, 2017, Ms. Javier received a check from Kaiser for $29,263.94, reflecting their buy out of her plan benefits, and withholding $8,253.94 in taxes from the total balance of Ms. Javier's pension account:  $37,517.88.  Notwithstanding her precarious financial condition, **Ms. Javier did not and has not to this day cashed the check she received from Kaiser**.

//

– 5 –

24.     Instead, Ms. Javier again called Kaiser to inquire about the check they had cut.  This time, Ms. Javier got some information—in fact, the information she had so desperately sought during her call of October 4.  During the November 16 call, Ms. Javier first learned that

- She did not have to "Act by October 5," but could have instead *done nothing* and continued to receive the pension protection she desperately needs;

- She could have rolled her pension fund into an alternative tax-deferred vehicle such as an IRA or 401(k), rather than abandoning the tax benefits of her protected pension;

- She should have received an offer from Kaiser to talk her through the "kit" she should have—but didn't—receive.  Without this assistance, Ms. Javier could not have understood the options presented to her, as she tried to explain during her very first phone call.

Unfortunately, the November 16 Kaiser representative confirmed that none of these options was available to Ms. Javier any longer, because she had already received the check she did not cash.  Ms. Javier repeatedly expressed how frustrated she was by having supposedly agreed to something she did not understand, saying:  "I'm not cool with this at all."

**B.    Ms. Javier Promptly Appeals to Kaiser**

25.     In the weeks following, Ms. Javier made multiple additional calls to the Kaiser Election Help Desk and Kaiser Retirement Center.  On March 2, 2018, during one of those calls, a Kaiser representative admitted to Ms. Javier that the Kaiser representatives who'd urged her to accept the buyout via Kaiser's online site didn't have any information about her account at all, but instead "were just going by this is the deadline to make a decision.  That's all their job was; it was to inform people about the decision and the deadline for it.  **They're not the retirement center.  So I—I apologize for that.**"  The representative further admitted to Ms. Javier that the original representatives should have referred Ms. Javier to the retirement department, concluding that:  "I'm sorry that that happened but we're—**we're going to work it out for you**.  Okay?"

26.     But Kaiser did not work it out for her.  Instead, a few days later, a Kaiser representative told Ms. Javier she could not cancel the buy-out, and that her only option was to prepare and file an administrative appeal.  Ms. Javier, with the assistance of her children, prepared a claim and filed it in just a few weeks.

//

27.     Kaiser summarily denied Ms. Javier's appeal.  In a letter titled "Notice of Denial" and dated June 21, 2018, Kaiser refused to return Ms. Javier's pension fund, listing various notices they claimed to have sent her but which Ms. Javier did not receive, and which no representative ever referenced.

28.     The Notice of Denial letter acknowledges Ms. Javier's disability, and the fact that she informed Kaiser representatives of that disability.  Kaiser thus confirmed it was aware of Ms. Javier's disability, but based its denial on its own interpretation of her health status:  Kaiser concluded that, because Ms. Javier's SSDI letter noted that "medical improvement is expected with appropriate treatment," Kaiser could self-servingly assume her condition had *in fact* improved (it hadn't) and thus did not impact their responsibilities or their decision.

29.     The June 21 denial letter also cited the Plan's "90-day election period," indicating at that time Kaiser believed a 90-day election period was required by the Plan.  But, unbeknownst to Ms. Javier—and Kaiser itself at the time of the June 21 denial letter—Kaiser had unilaterally amended the terms of the Plan to shorten the amount of time plan beneficiaries had to act with regard to the buy-outs Kaiser solicited in 2017.  Ms. Javier, and other beneficiaries of the Plan, were only given from August 21 through October 5, or 46 days, to act on the 2017 Special Distribution Election.  *See Javier v. Kaiser Foundation Health Plan Inc.*, Case No. 3:20-cv-00725 (N.D. Cal.), Dkt. 24-1 at 179. Had the election period run for 90 days, as the Plan requires, Ms. Javier's November 16 call to Kaiser to initiate cancellation would have been timely.

30.     Ms. Javier appealed again on June 28, 2018.  Kaiser denied that appeal for the same reasons as before, in a decision dated December 10, 2018.  Kaiser informed Ms. Javier of its position that the Plan's one-year limitations period superseded any ERISA statute of limitations, such that her civil claim would need to be filed no later than December 10, 2019.

**C.     Ms. Javier Timely Files Suit, and is Found Medically Incapable of Prosecuting Her Claim**

31.     On November 19, 2019, within the one-year limitations period Kaiser provided, and with the help and support of her daughter, Ms. Javier filed her first complaint for breach of contract in the Superior Court of California, County of Contra Costa, Case No. C19-02437 (Cal. Super. Ct. Contra Costa Cnty. Nov. 19, 2019).  Kaiser removed the action to federal court based on ERISA preemption.

*Javier v. Kaiser Foundation Health Plan Inc.*, Case No. 3:20-cv-00725 (N.D. Cal. filed Jan. 31, 2020)

(the "Javier I" action).

32.     On February 7, 2020, Kaiser filed a Motion to Dismiss Ms. Javier's initial complaint due to insufficient service and failure to state a claim, because the breach of contract claim was preempted by the federal ERISA statutes. *Javier I* Dkt. 11.

33.     On September 21, 2020, the *Javier I* court granted Kaiser's motion to dismiss on 12(b)(6) grounds, but denied dismissal for insufficient service, because Kaiser had actual notice of the lawsuit. *Javier I* Dkt. 26. The *Javier I* court granted Ms. Javier leave to amend to assert an ERISA claim. *Id.*

34.     On December 3, 2020, Ms. Javier timely filed an amended complaint in the *Javier I* action, asserting an ERISA claim against Kaiser. *Javier I* Dkt. 29.

35.     On September 10, 2021, Kaiser filed a motion for summary judgment on Ms. Javier's ERISA claim. Ms. Javier filed opposition papers along with a letter from her physician, Dr. Silver, requesting leave for Ms. Javier to attend hearings by telephone:

> Lia C. Javier is under my care for treatment of psychiatric disorder. Due to this illness, she is medically unable to be present in the courtroom. Her disability is permanent so this medical excuse should be as well. Please allow her to use the telephone to attend hearings.

*Javier I* Dkt. 58-2.

36.     On January 11, 2022, the court filed an order holding that "[i]n light of plaintiff's doctor's letter, Dkt. No. 58-2, all pretrial and trial dates are vacated. The case is stayed pending further order. IT IS SO ORDERED." *Javier I* Dkt. 62. The *Javier I* court ordered a status conference on February 2, 2025. *Javier I* Dkt. 65.

37.     Two days later, Ms. Javier filed another request to attend hearings by telephone. *Javier I* Dkt. 63. Ms. Javier repeated that request in the parties' second joint case management statement. Kaiser did not object to Ms. Javier's request to appear telephonically. The *Javier I* court did not issue an order regarding Ms. Javier's request to appear telephonically, and Ms. Javier failed to appear for the February 2, 2023, conference. *Javier I* Dkt. 67.

//

//

38.  On February 6, 2023, the *Javier I* court ordered Ms. Javier to show cause for her absence from the status conference. *Javier I* Dkt. 68. Ms. Javier filed an apology to the court on the same day, explaining that she had received the following letter from Dr. Silver:

> Lia C Javier has been under my care for four years. This patient suffers from a severe psychiatric illness that presents with paranoia, auditory hallucinations and agitation. I have no doubt that these symptoms would be exacerbated in a court hearing. As such, it is my professional opinion that Ms. Javier is not able to represent herself in a courtroom in a clear and constructive way.
>
> Ms. Javier is requesting that her daughter act on her behalf and I am supportive of her decision. Another option suitable for this patient is to conduct the hearing by telephone. The patient requests her daughter be present if the remote option is available. If you have any questions, please contact me at the above phone number.

*Javier I* Dkt. 69 at 3-5.

39.  On March 14, 2023, the court dismissed Ms. Javier's claim without prejudice for lack of prosecution. The Court found that Dr. Silver's letters "indicated that Javier was not capable of handling this litigation," and that "[t]he Court is sympathetic to Javier's situation, but her daughter is not an attorney and cannot represent Javier." *Javier I* Dkt. 72.

40.  On April 20, 2023, Ms. Javier filed a motion for relief from a judgment or order and pleaded with the court that it reconsider its dismissal of her case, promising that she was committed to speak for herself if the case could proceed. *Javier I* Dkt 73 at 2-4. The *Javier I* court denied that motion, finding that

> Although Javier says that she will appear on her own behalf going forward, the letter from her physician dated January 30, 2023, states that 'Ms. Javier is not able to represent herself in a courtroom in a clear and constructive way.' Dkt. No. 69 at 4. The letter from her physician dated October 15, 2021, states that Javier is 'medically unable to be present in the courtroom,' and that '[h]er disability is permanent so this medical excuse should be as well.' Dkt. No. 63 at 5. Javier has not presented evidence that her circumstances have changed such that she can now represent herself.

*Javier I* Dkt. 80 at 1-2.

**D.  Ms. Javier Files This Action**

41.  Following the *Javier I* court's dismissal of her case, Ms. Javier devoted nearly a full year to working closely with her doctors to enable her to pursue this action. During the period between April

– 9 –

2023 and March 2024, Ms. Javier received a higher level of psychiatric care including substantial in-person therapy and modification to her prescription schedule and dosage. On February 13, 2024, Dr. Silver wrote a new letter to explain that circumstances had changed:

> Lia Javier is under my care for treatment of a psychiatric disorder. I am writing this letter to confirm that patient has been attending her appointments and taking her medications as prescribed. She is able to speak on her own behalf.

*Javier I* Dkt. 81-1.

42.     On March 25, 2024, Ms. Javier filed a renewed motion to reopen her case in the *Javier I* court. *Javier I* Dkt. 81. The court denied Ms. Javier's motion, noting that the action was dismissed without prejudice, such that Ms. Javier could "appeal that decision or file a new lawsuit."

43.     On June 3, 2024, Ms. Javier filed this action. Dkt. 1.

**E.     The Statute of Limitations Should Be Equitably Tolled**

44.     Ms. Javier has been, to the very best of her abilities and under her particular and extraordinary circumstances, actively pursuing her rights since the moment she first sought cancellation of her unwitting election to permit Kaiser's buyout of her pension benefit.

45.     Kaiser has been on notice of Ms. Javier's claims since before day one: she contacted dozens of Kaiser representatives, filed multiple appeals, and initiated suit within the brief limitations period ostensibly allowed by the Plan.

46.     Ms. Javier is in the extraordinary position of having been denied an opportunity to be heard in her timely filed case due to a finding that she was medically incapable of pursuing it. Courts in the Ninth Circuit routinely recognize mental disability as "extraordinary circumstances" warranting equitable tolling. *E.g.*, *Poisson v. Aetna Life Insurance Company*, 488 F. Supp. 3d 942 (C.D. Cal. 2020); *Brockamp v. United States*, 67 F.3d 260, 263 (9th Cir. 1995). And courts in this Circuit have explicitly held that equitable tolling can apply to ERISA claims. *See Moyle v. Liberty Mutual Retirement Benefit Plan*, 263 F. Supp. 3d 999 (S.D. Cal. 2017).

47.     Given that Ms. Javier's disability is both well documented and judicially noticed, and that Kaiser has had actual notice of her claims, and Ms. Javier's repeated attempts to pursue them, since well within the statute of limitations, equitable tolling should apply.

//

**FIRST CAUSE OF ACTION**

**Section 502(a)(1)(B) of ERISA; 29 U.S.C. § 1132(a)(1)(B)**

48.     Ms. Javier alleges and incorporates by reference the allegations in all proceeding paragraphs.

49.     29 U.S.C. § 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and to clarify her right to future benefits under the terms of a plan.

50.     The Plan constitutes an "employee benefit plan" within the meaning of 29 U.S.C. § 1002, et. seq., as an "employee pension benefit plan;" providing for retirement benefits to eligible participants.

51.     At all relevant times, Ms. Javier was a participant of the Plan and Defendant was responsible for the administration and handling of Ms. Javier's benefits under the Plan, as it exercises discretionary authority over plan assets and plan administration.

52.     At all relevant times, Ms. Javier has suffered from acute mental disability requiring substantial daily assistance from her children to meet daily needs.

53.     Defendant improperly and unlawfully denied, and continues to deny, Ms. Javier the benefit of participation in the Plan.  Over Ms. Javier's repeated protestations that she is disabled and was unable to understand Defendant's offer, Defendant urged Ms. Javier to approve Defendant's buy out of her pension plan while simultaneously refusing to explain the nature of the choice presented and the risks associated with waiving the security and tax-deferral benefits of her pension.

54.     Defendant further improperly refused to accept Ms. Javier's cancellation of her coerced agreement to Defendant's buy out and arbitrarily denied Ms. Javier's appeal based on its unsupported conclusion that she had in fact recovered from her mental disabilities

55.     Defendant's combined roles as the administrator of the Plan and the entity that pays for benefits under the Plan created an inherent conflict of interest in the application of its discretion to deny Ms. Javier the benefit of participation in the Plan.

56.     Defendant at all relevant times knew and acknowledged Ms. Javier's mental disability.

57.     Ms. Javier has exhausted the administrative remedies available to her under the Plan, and otherwise satisfied all conditions precedent necessary to prosecute this action.

58. Ms. Javier has performed all conditions, covenants, and promises required of her to be performed in accordance with the terms and conditions of the Plan.

59. Defendant's wrongful conduct has harmed and continues to harm Ms. Javier by denying her rightful benefits under an ERISA pension plan, resulting in a loss of those benefits, negative tax consequences, and impacts on other available benefits to Ms. Javier. Defendant's wrongful conduct has further caused Ms. Javier substantial emotional distress.

**SECOND CAUSE OF ACTION**

**Section 502(a)(3) of ERISA; 29 U.S.C. § 1132(a)(3)**

60. Ms. Javier alleges and incorporates by reference the allegations in all proceeding paragraphs.

61. At all relevant times, Ms. Javier was a participant of the Plan and Defendant was responsible for the administration and handling of Ms. Javier's benefits under the Plan, as it exercises discretionary authority over plan assets and plan administration.

62. As the administrator of the Plan, Defendant owes a fiduciary duty to participants and beneficiaries of the Plan, including Ms. Javier.

63. At all relevant times, Defendant owed Ms. Javier all the duties prescribed under ERISA, including without limitation those set forth in Title I or ERISA, and specifically 29 U.S.C. § 1104(a).

64. Defendant breached its fiduciary duties, and duties prescribed under ERISA, owed to Ms. Javier by, among other acts, failing to discharge its duties solely in the interest of, and for the exclusive purpose of, providing benefits to participants and their beneficiaries, including Ms. Javier. Further, Defendant breached said duties by failing to discharge its duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent fiduciary acting in a like capacity and familiar with such matters would us in the conduct of an enterprise of a like character and with like aims.

65. At all relevant times, Ms. Javier has suffered from acute mental disability requiring substantial daily assistance from her children to meet daily needs.

66. Defendant's conduct in urging Ms. Javier to accept a pension plan buyout while failing to provide Ms. Javier with adequate notice, time, information, or support to fully understand her options—let alone the risks associated with waiving the security and tax-deferral benefits of her

pension—constitute independent and collective breaches of Defendant's fiduciary and plan administrator.

67.     Defendant's conduct in failing to provide adequate contact information for plan participants, including Ms. Javier, to cancel the 2017 plan election during the limited window provided constitutes an independent breach of Defendant's duty to Ms. Javier as a fiduciary and plan administrator.

68.     Defendant's conduct in executing a self-serving plan amendment without adequate notice or procedure constitutes an independent breach of Defendant's duty to Ms. Javier as a fiduciary and plan administrator.

69.     Defendant's conduct in arbitrarily and capriciously denying Ms. Javier's appeal based on its unsupported conclusion that she had in fact recovered from her mental disabilities constitutes an independent breach of Defendant's duty to Ms. Javier as a fiduciary and plan administrator.

70.     Defendant's wrongful conduct violated Ms. Javier's rights under the Plan itself in addition to applicable ERISA statutes.  Each of Defendant's failures set forth above further evidence self-dealing, bias, and  failure to investigate Ms. Javier's claims.

71.     As a direct result of Defendant's breach of its fiduciary duties, Ms. Javier was removed from the Plan and the associated benefits of participation in her pension plan.

72.     Defendant's breach of fiduciary duties owed to Ms. Javier has caused harm that requires equitable relief to remedy; the reinstatement of Ms. Javier into her pension plan.

## DEMAND FOR RELIEF

73.     Plaintiff, Ms. Javier, requests that the Court:

74.     Enter judgment on all claims in Ms. Javier's favor;

75.     Award damages according to proof;

76.     Award equitable relief, not limited to reinstatement of Ms. Javier's ERISA plan benefits;

77.     Award attorneys' fees, costs, and disbursements in this action; and

//

//

//

78.    Award such other relief as the Court may deem just and proper.


Date:  July 31, 2025                            Respectfully submitted,

_____

Erika H. Warren (State Bar No. 295570)
Jesse A. Macias (State Bar No. 254794)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-3327@cases.warrenlex.com

*Pro bono attorneys for Plaintiff Lia Javier*